UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-CR-00328-CAS-2 | | Date | January 14, 2021 |
|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | |
| Interpreter | N/A | | | |

| Catherine Jeang | Not Present | Joseph Axelrad, Not Present<br>Jeffrey Chemerinsky, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant: | Present | Cust. | Bond | Attorneys for Defendant: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| REGINALD BAILEY | NOT | X | | GIA KIM, DFPD | NOT | X | |

**Proceedings:**   (IN CHAMBERS) - DEFENDANT'S MOTION FOR MODIFICATION OF TERM OF IMPRISONMENT UNDER 18 U.S.C. § 3582(c)(1) (Dkt. 449, filed on June 19, 2020)

## I.   INTRODUCTION

By order dated January 4, 2020, the Court, pursuant to the stipulation of the parties, directed that defendant Reginald Bailey be released from custody, and directed the U.S. Probation and Pretrial Service Office to find an appropriate facility in Southern California to which to transport defendant, for provision of appropriate care and rehabilitation. Dkt. 473.

By way of background, on June 19, 2020, defendant filed with this Court a Motion for Modification of Term of Imprisonment Under 18 U.S.C. § 3582(c)(1) ("Motion"). Dkt. 449. The government opposed the Motion on August 3, 2020 ("Opposition"), dkt. 453, and defendant filed a Reply on August 10, 2020 ("Reply"), dkt. 455. An initial hearing was held August 17, 2020.

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   BACKGROUND

On July 26, 2016, defendant and a co-defendant were convicted at retrial of conspiracy to commit Hobbs Act robbery, five counts of Hobbs Act robbery, and five counts of brandishing a firearm in furtherance of, and during and in relation to, each Hobbs Act robbery. Dkt. 235. Accordingly, on May 24, 2019, this Court imposed a sentenced of 35 years and one day imprisonment, followed by a three-year term of supervised release. Dkt. 356. This sentence reflected the statutory mandatory minimum, specifically, seven years for each of the five counts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**           **'O'**

of robbery committed with a firearm, to be served consecutively.  <u>Id.</u>; <u>see</u>   18 U.S.C.
§ 924(c)(1)(A)(ii).

### A. Defendant's Medical Condition at the Time of the Parties' Initial Filings

At the time of the parties' initial filings, defendant was 75 years old and had served just over six years of his 35-year sentence.  The Bureau of Prisons ("BOP") incarcerated defendant at Federal Corrections Institution ("FCI") Terre Haute, a medium-security prison in Indiana.  The parties did not discuss whether defendant had engaged in any rehabilitation programs, or committed any infractions, while incarcerated.

Defendant had been diagnosed with several health conditions that formed the basis of his request for compassionate release:

- *Kidney disease*: According to Dr. Rav Jeevan, who examined defendant on February 18, 2020, defendant had "chronic kidney disease stage IV."  Dkt. 449-5 at 58.  The kidney disease is irreversible and has worsened since sentencing.  Dkt. 449-5 at 58; Mot. at 6.  Although Dr. Jeevan identified no complications related to renal dysfunction, it remained likely defendant would need renal replacement surgery in the future, and would require dialysis soon.  Dkt. 449-5 at 58.

- *Hearing loss*: On November 6, 2019, an audiologist, Kimberly R. Mentock, AuD, diagnosed defendant with "moderate sloping to profound sensorineural hearing loss" in both ears.  Dkt. 449-5 at 120.  His speech discrimination scores were "poor at 4% in the right ear and 0% in the left ear," Dkt. 449-5 at 120, and he struggled with verbal communication, Mot. at 9.

- *Hepatitis C*: Defendant was diagnosed with chronic hepatitis C in 2015, and was flagged for possible hepatitis C treatment on December 10, 2019.  Dkt. 449-5 at 33, 39, 70.  Defendant was recommended for hepatitis C treatment in January 2019, but the Central Office ordered that treatment be deferred.  Dkt. 449-5 at 114.

- *Hypertension*: Defendant had high blood pressure, for which he took several medications.  Dkt. 449-5 at 11, 12, 40.

- *Mobility*: According to a BOP health record dated April 20, 2020, defendant had degenerative joint pain and osteoarthritis.  Dkt. 449-5 at 40–41.  At the time of the initial filings, defendant was a candidate for knee replacement surgery, Dkt. 449-5 at 109, and used a rolling walker with a seat, Dkt. 449-5 at 36.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL          'O'**

- *Type 2 diabetes with peripheral neuropathy* (tingling and aching in the legs): On March 20, 2020, a board-certified BOP nurse practitioner examined defendant and concluded that defendant's neuropathy was likely worsening.  Dkt. 449-5 at 3.  Furthermore, defendant's blood sugars continued to increase.  Dkt. 449-5 at 3.

- *Vision*: On December 18, 2019, defendant had an ophthalmology consult resulting in a recommendation for cataract surgery on both eyes.  Dkt. 449-5 at 66–67.  His vision is cloudy and blurry.  Dkt. 449-5 at 66.

### B. Parties' Arguments at the Time of Filing

The parties initially disputed (1) whether defendant had shown extraordinary and compelling reasons for a sentence reduction under 18 U.S.C. § 3582(c)(1) ("Section 3582(c)(1)"), and (2) whether the 18 U.S.C. § 3553(a) ("Section 3553(a)") factors favor his release, specifically, whether defendant posed a danger to the community.

   1.  Extraordinary and Compelling Reasons

The parties disputed whether defendant had demonstrated "extraordinary and compelling reasons" for compassionate release under Section 3582(c)(1).[1]

---

[1] The parties also disputed whether the Court is bound by the Sentencing Commission's policy statement on Section 3582(c)(1), namely U.S.S.G. § 1B1.13 ("Section 1B1.13").  See Mot. at 14–15; Opp. at 18.  Section 1B1.13 is relevant because a sentence reduction under Section 3582(c)(1)(A) must be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  Section 1B1.13 has been such a policy statement, but since the passage of the First Step Act, courts differ on whether it remains "applicable."  See United States v. Rodriguez, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).  For its part, Section 1B1.13 addresses when a circumstance is "extraordinary and compelling."  U.S.S.G. § 1B1.13, cmt. n.1(A)–(D).  This Court has joined a growing number that find Section 1B1.13, while informative, is no longer binding on courts because it has not been updated since the sweeping changes brought by the FSA.  See U.S.A. v. Defendant(s), No. 2:99-CR-00257-CAS-3, 2020 WL 1864906 (C.D. Cal. Apr. 13, 2020) ("Wade").  Accordingly, "if the FSA is to increase the use of compassionate release, the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it."  United States v. Brown, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019), order amended on reconsideration, 457 F. Supp. 3d 691

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL          'O'**

Defendant argued that his medical conditions constituted extraordinary and compelling reasons for compassionate release.  Mot. at 17.  Although he argued Section 1B1.13 was not binding on the Court, defendant cited to it for guidance on what constituted extraordinary and compelling reasons under Section 3582(c)(1).  Specifically, he argued that his (1) stage IV kidney disease, (2) diabetes with peripheral neuropathy, and (3) hearing loss constitute "serious physical … condition[s]," "serious functional or cognitive impairment," or aging-related deterioration of physical or mental health under subsection (A)(ii) of Comment Note 1 in Section 1B1.13.  Mot. at 17.  Pursuant to that same Note, defendant argued that these conditions "substantially diminish[ed] his ability to provide self-care" while incarcerated.  Mot. at 17.

The government argued that defendant's ailments fell short of extraordinary and compelling reasons.  Opp. at 17–18.  Defendant's medical conditions did not satisfy these requirements, according to the government, because he "ha[d] not been diagnosed with an incurable progressive illness, nor ha[d] he suffered a debilitating injury from which he [would] not recover."  Opp. at 18.

Defendant further argued that, even if his medical conditions alone did not rise to the level of extraordinary and compelling reasons, the presence of COVID-19 at his facility constituted an extraordinary and compelling reason justifying his early release.  The root of defendant's argument was that his advanced age, diabetes and liver disease put him in multiple high-risk groups for COVID-19. Mot. at 19.  Of particular relevance to defendant, the Centers for Disease Control and Prevention ("CDC") warns that "chronic kidney disease at any stage" increases the risk of "severe illness from COVID-19."  CDC, *Groups at Higher Risk for Severe Illness*, cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html          ("CDC, *Groups at Higher Risk for Severe Illness*") at Table 3.  Defendant argued that if he were to undergo dialysis—which, according to Dr. Jeevan, was possible in the near future, dkt. 449-5 at 58—he would be at an even higher risk (although the CDC posting provided by defendant to support this contention did not mention dialysis).  Mot. at 19; <u>see</u> CDC, *Groups at Higher Risk for Severe Illness*.  Furthermore, the CDC cautions that "type 2 diabetes increases [one's] risk of severe illness from COVID-19.  CDC, *Groups at Higher Risk for Severe Illness*.  Defendant also argued that his hearing loss, while not an underlying condition, tends to increase the risk of contracting COVID-19 because it makes mask-wearing and social distancing more problematic: both make hearing more difficult.  Derrick Bryson Taylor, *For the Deaf, Social Distancing Can*

(S.D. Iowa 2020).  In any event, now that the parties stipulate that defendant's circumstances are extraordinary and compelling, this relevance of Section 1B1.13 is moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**          **'O'**

*Mean Social Isolation*, New York Times (June 4, 2020), https://www.nytimes.com/2020/06/04/us/coronavirus-deaf-culture-challenges.html.

The government responded that COVID-19 did not constitute an extraordinary and compelling reason for compassionate release, even in light of defendant's existing health concerns. First, the government argued that the general threat of COVID-19 could not, in and of itself, constitute an extraordinary and compelling reason because it applied equally to any inmate. Opp. at 19–20. Second, the government argued that the BOP and FCI Terre Haute staff could manage the risk COVID-19. Opp. at 19. The BOP implemented its Pandemic Influenza Plan in January of 2020, and had escalated its response to COVID-19 since then, including at one point instituting a general lockdown across all facilities. Opp. at 8–9. At the time of the parties' briefing, BOP staff purported to check inmates' temperature at least once daily. BOP, *Correcting Myths About BOP and COVID-19*, at 1 (May 6, 2020).[2] The BOP had distributed masks to staff and cleaning supplies to inmates. Id. at 2. Inmates who tested positive for COVID-19 were isolated, and were sent to local hospitals if their condition warranted. Id. The government argued it would be premature to assume that BOP would be unable to manage an outbreak of COVID-19 at FCI Terre Haute. Opp. at 25.

Additionally, the government pointed out that the BOP had a range of administrative options to address defendant's concerns around COVID-19 less drastic than a permanent sentence reduction. Opp. at 11. The BOP could, for instance, transfer vulnerable inmates to home confinement. Opp. at 11. (Defendant responded that the BOP had already denied his request for home confinement. Dkt. 449-7 at 1.) Furthermore, the BOP could grant an inmate temporary furlough from custody in order to obtain medical treatment, among other things, usually for three to seven days. Opp. at 13; BOP, Program Statement 5280.09, *Inmate Furloughs* § 570.32(c)(2), at 5 (Jan. 20, 2011).[3]

2. Danger to the Community

The parties also disputed whether defendant posed a danger to the community. Defendant argued that he posed no danger to the community largely because his various health concerns—especially his poor hearing, eyesight and mobility—rendered him unlikely to reoffend. Mot. at 22; Reply at 10, 11. Specifically, in the years since his crimes of conviction, defendant had

---

[2] Available at: https://www.bop.gov/coronavirus/docs/correcting_myths_and_misinformation_bop_covid19.pdf

[3] Available at: https://www.bop.gov/policy/progstat/5280_009.pdf

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL          'O'**

developed chronic kidney disease, diabetes with neuropathy, hearing loss in both ears, and cataracts in both eyes. Reply at 10. Further, although defendant had hypertension, type 2 diabetes and osteoarthritis when he committed the robberies at issue here, he suggested these conditions may have worsened since then. Reply at 10. Beyond his physical inability to commit crime, defendant argued that the 35-year gap between his most recent prior felony conviction and the crimes of conviction in this case suggested he could refrain from criminality. Mot. at 22. Defendant also pointed out that, though serious and involving firearms, his crimes of conviction did not involve the discharge of a firearm nor physical injury to any victims. Mot. at 23. Finally, defendant contended that his social and community ties suggested he posed little risk of danger to the community. Mot. at 23.

The government contends that defendant posed a real danger to the community. Opp. at 21. The thrust of the government's argument was that defendant had a "long and demonstrated history of violence," including the crimes of conviction here, which involved firearms. Opp. at 21. Furthermore, the government argued that little had changed since defendant's conviction: When he committed the robberies at issue here, he already suffered from several of the ailments to which he now pointed as reassurance that he is unlikely to reoffend. Opp. at 21.

At a September 14, 2020 hearing, the Court requested that the parties ascertain from the BOP what medical care was being provided to defendant, whether defendant needed dialysis and how the BOP would provide dialysis, if the need arose, and what COVID-19 protocol FCI Terra Haute had put in place.

### C. Defendant's Medical Condition Since Initial Filings

Since the parties' filings, defendant's health worsened significantly. On November 12, 2020, defendant filed an *ex parte* requesting that the government provide defendant's counsel with regular updates on defendant's medical condition. Dkt. 463. Defendant's counsel filed the *ex parte* upon learning, through a Freedom of Information Act ("FOIA") request, that defendant had tested positive for COVID-19 and had suffered pulmonary complications. Id. at 1. As a result, defendant had been hospitalized in the intensive care unit of a community hospital since October 2, 2020. Id. at 2. He had suffered renal failure and was now on dialysis as of October 6, 2020. Id. Furthermore, defendant was on a ventilator and had had a tracheostomy and a feeding tube inserted. Id. It appeared that defendant had suffered a stroke and was being sedated. Id.

In a November 23, 2020 hearing, the government informed the Court that defendant was on mechanical ventilation and would have to remain on ventilation indefinitely. According to the government, there was no possibility of transferring defendant at that time.

In a December 21, 2020 hearing, the government informed the Court that defendant was no longer on a ventilator. The government reported that defendant was no longer in an intensive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**          **'O'**

care unit and that the process to transfer defendant to a medical detention center was under way. Nevertheless, defendant required full nursing care, remained non-responsive, and was receiving dialysis three times per week.

At the January 4, 2021 hearing, all parties agreed compassionate release was appropriate.

## III.   LEGAL STANDARD

"A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances." Dillon v. United States, 560 U.S. 817, 824 (2010) (alterations omitted). "Compassionate release provides an exception" to this general rule "in extraordinary cases." United States v. Holden, No. 3:13-cr-00444-BR, 2020 WL 1673440, at *2 (D. Or. Apr. 6, 2020).

Prior to December 21, 2018, "the Court could only reduce a sentence of imprisonment upon a motion of the Director of the Bureau of Prisons[.]" United States v. Esparza, No. 1:07-cr-00294-BLW, 2020 WL 1696084, at *1 n.1 (D. Idaho Apr. 7, 2020). But on December 21, 2018, Congress enacted—and the President signed into law—the First Step Act of 2018 ("the FSA"), "with the intent of 'increasing the use and transparency of compassionate release.'" United States v. Willis, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019). Accordingly, the FSA now "permits defendants to bring their own motions for compassionate release after first exhausting their administrative remedies with the Bureau of Prisons." United States v. Ayon-Nunez, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *2 (E.D. Cal. Feb. 12, 2020). "Although relief under the statute is commonly referred to as 'compassionate release,' such relief is not limited to immediate release, but includes a reduction in sentence." United States v. Marks, No. 03-cr-06033-L, 2020 WL 1908911, at *3 n.3 (W.D.N.Y. Apr. 20, 2020).

"Compassionate release is governed by 18 U.S.C. § 3582(c)." Willis, 382 F. Supp. 3d at 1187. The FSA modified Section 3582(c)(1)(A)(i) to allow for compassionate release when three requirements are met: "First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. Second, a district court may grant compassionate release only if 'extraordinary and compelling reasons warrant such a reduction' and 'such reduction is consistent with applicable policy statements issued by the Sentencing Commission.' Third, the district court must also consider 'the factors set forth in Section 3553(a) to the extent they are applicable.'" United States v. Rodriguez, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019) (citing 18 U.S.C. § 3582(c)(1)(A)(i)). The FSA "grants broad discretion to the district courts in providing relief[.]" Jones v. United States, No. 4:98-cr-10-01, 2020 WL 219311, at *3 (E.D. Va. Jan. 6, 2020).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**               **'O'**

## IV.    DISCUSSION

### A. Exhaustion of Legal Remedies

The Court "may entertain an inmate's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) only (1) 'after he has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion' on his behalf or (2) after 'the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" United States v. Cooper, No. 2:14-cr-00228-JAD-CWH, 2020 WL 2064066, at *2 (D. Nev. Apr. 29, 2020) (alterations omitted) (citing 18 U.S.C. § 3582(c)(1)(A)).   In addition, "[e]xhaustion occurs when the BOP denies a defendant's application[.]"  United States v. Mondaca, No. 89-cr-00655-DMS, 2020 WL 1029024, at *2 (S.D. Cal. Mar. 3, 2020) (citation omitted).  The parties here do not dispute that the exhaustion requirement is met.

Here, defendant has exhausted his administrative remedies.  On December 2, 2019, defendant filed a *pro se* request for compassionate release.  Dkt. 449-7 at 1.  On January 16, 2020, the warden denied defendant's request, dkt. 449-7 at 1, and on May 6, 2020, defendant filed a renewed request for compassionate release, this time with assistance of counsel, dkt. 449-6.  On May 12, 2020, the warden again denied defendant's request.  Dkt. 449-7.  Accordingly, this requirement has been met.

### B. Extraordinary and Compelling Reasons Warranting Sentence Modification

Section 3582(c) "provides a path for defendants in 'extraordinary and compelling circumstances' to be released from prison early."  Rodriguez, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 3582(c)(1)(A)).  A number of district courts have determined that "extraordinary and compelling" reasons for compassionate release exist "when the prisoner suffers from preexisting health conditions that might make a COVID-19 infection more lethal."  United States v. O'Neil, No. 3:11-cr-00017, 2020 WL 2892236, at *6 (S.D. Iowa June 2, 2020).  The defendant bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction. United States v. Sprague, 135 F.3d 1301, 1306-07 (9th Cir. 1998).

Here, defendant's severe health problems constitute extraordinary and compelling reasons for release.  While the determination was less clear-cut when defendant first filed his motion, the parties now agree that defendant's need for nursing care and thrice-weekly dialysis, combined with his preexisting conditions, rises to the level of extraordinary and compelling.  Accordingly, the Court finds this requirement has been met.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**            **'O'**

### C. Danger to the Community

In addition, prior to granting compassionate release, and "[e]ven where extraordinary and compelling reasons exist," the Court "must consider whether the defendant is 'a danger to the safety of any other person or to the community[.]'" <u>Mondaca</u>, 2020 WL 1029024, at *3. "To make this assessment," the Court considers a number of factors "including, among other things: (1) the nature and circumstances of the offense charged; (2) the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, past conduct, criminal history, and drug and alcohol abuse; and (3) the nature and seriousness of the danger to any person or the community that release would impose." <u>Id.</u>

Here, defendant cannot be said to pose a danger to the community considering his current medical condition. While there may have been a question as to the danger he posed before he contracted COVID-19 and suffered a stroke, now that defendant requires nursing care, it is clear that he poses no danger to the community. Furthermore, defendant reports that he has social supports such as friends and a daughter who express willingness to support defendant. Mot. at 22–23. Accordingly, this requirement has been met. <u>See</u> <u>United States v. Ben-Yhwh</u>, No. CR 15-00830 LEK, 2020 WL 1874125, at *6 (D. Haw. Apr. 13, 2020) (history and characteristics of defendant favor release where defendant suffers from advanced Parkinson's Disease; requires extensive mental health treatment, medication and assistance for self-care; and family will provide this care).

## V.   CONCLUSION

In accordance with the foregoing, the Court **GRANTS** defendant's Motion for Modification of Term of Imprisonment. As stated in the Court's January 4, 2021 order, the Court orders defendant be released from custody. The Court further directs the U.S. Probation and Pretrial Service Office to find an appropriate facility in Southern California to which to transport defendant such that he may be provided appropriate care and rehabilitation.

IT IS SO ORDERED.

|  | 00 | : | 00 |
| --- | --- | --- | --- |
| Initials of Deputy Clerk | | CMJ | |